Forster *vs.* Ulman, *et al.*

Its order dismissing the appellants' petition, will therefore be affirmed.

*Order affirmed.*

(Decided 9th March, 1886.)

---

GEORGE H. FORSTER *vs.* ALFRED J. ULMAN, CHARLES GOLDSBOROUGH, and WILLIAM T. GOLDSBOROUGH.

*Offer by one Partner to Assume a bad Debt due the Firm—Non-acceptance of Offer—Consideration.*

A proposal by one partner to assume a debt due the firm by an insolvent, provided the goods, by the consignment of which the debt was incurred, were charged to him at cost prices, cannot be enforced as a contract, it not having been accepted, and being without consideration.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, ROBINSON, and BRYAN, J.

*Fielder C. Slingluff,* and *Bernard Carter,* for the appellant.

*M. R. Walter,* and *S. Teackle Wallis,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The appellant alleges, in his bill, that he together with Alfred J. Ulman, Charles Goldsborough, and William T. Goldsborough composed the firm of "Ulman, Goldsborough and Forster," which was engaged in the wholesale liquor business in Baltimore City. He charges that the firm dissolved on the 30th of April, 1882, and by agreement of dissolution, filed as part of his bill, Alfred J. Ulman was made the settling partner, and that he has collected moneys due the partnership, and refuses to pay him his due proportion thereof; that, with the concurrence of Charles Goldsborough and Wm. T. Goldsborough two other members of the firm, he has, against the protest of the complainant, charged him with a certain claim due the firm from Roemer & Schultz in New Orleans, to whom the firm had consigned goods from time to time; and that this claim amounting to four thousand, four hundred and fifty-seven dollars and ten cents, he has deducted from the share of the complainant, and has divided between himself and Charles and William T. Goldsborough. The prayer of the bill is for account, injunction, a receiver, and such other relief as complainant may be entitled to.

The answer of Alfred J. Ulman, Charles Goldsborough and William T. Goldsborough, the other partners, admits that the Roemer & Schultz account has, by their concurrence, been charged against the complainant, against his protest, but they say it was properly done; because before the dissolution, the complainant "assumed the debt, and directed the same to be charged to his account, having undertaken for his own account personally to collect the same."

The proof shows that Ulman had charge of the finances of the firm, that Charles and William Goldsborough were occupied in travelling for the house, and that Forster had the general management of the business in the office, and also travelled a part of his time in the south.    At the instance of Forster the house formed business connections with Roemer & Schultz and consigned them goods for sale. Very early in their business connections with Roemer & Schultz, Ulman and the Goldsboroughs became dissatisfied with their remittances, and concluded it was better to stop consigning to them.    Mr. Ulman so testifies; and when they telegraphed to " Ulman, Goldsborough & Forster " to protect their note falling due, and asked for extension, a reply was immediately sent declining to protect and extend ; and Mr. Ruhstrad, who was then in New Orleans, travelling for the. appellees, was telegraphed to remove the consignments from Roemer & Schultz.    Mr. Forster being in New Orleans, Ruhstrad handed him the communication.    He examined into the condition of Roemer & Schultz, and did not execute the order of the firm, to remove their goods from that firm's control.    Upon the appellant's return to Baltimore he reported, and told Mr. Ulman he was satisfied with the condition of Roemer & Schultz and he would not execute the firm's order.    Thereupon Mr. Ulman says he told Forster, that if he was determined " to continue with Roemer & Schultz, in spite of our protest, we had better have *a conversation and understanding* about it ;" that the Goldsboroughs " were emphatic that no more credit should be given, and no more consignments should be made to Roemer & Schultz."    Appellant replied, as Mr. Ulman says, " I will attend to that ;" and, as far as he was concerned, the matter rested there.    Subsequently, Messrs. Roemer & Schultz failed, and, upon being informed of their failure, the appellant said he would assume the account and take it upon himself, and his subsequent refusal to do so gives rise to this

controversy. The Court below passed a decree referring the case to the auditor, with instructions to charge the appellant with the balance due from Messrs. Roemer & Schultz, and to credit him with the profits which had been made on the goods. From this decree this appeal was taken.

The appellees contend that the decree is right on two grounds: 1. Because the goods were consigned to Messrs. Roemer & Schultz against the protest of the other partners and thereby he became accountable for them: and 2. Because after the failure of Roemer & Schultz, the appellant made a personal settlement with them for his own account, and assumed the same to the firm, and that it is an executed contract; and that the Statute of Frauds has no application. The appellant denies these positions, and insists that there was no consideration for his alleged undertaking.

It is certainly true that a man is bound, by the laws of nature and honor, to fulfil his engagements; but it is equally true, that the law affords no "remedy to compel the performance of an agreement made without sufficient consideration." And while, as a rule, Courts of law will not inquire into the adequacy of the consideration, they will insist, that it shall be *something of value* in the eye of the law. Mr. Anson says the consideration need not be adequate, but must be real. *Anson on Contracts,* 71.

If the evidence would warrant us in finding there was an absolute prohibition by the partners against the consignment of more goods to Roemer & Schultz; and that every time a consignment was made to them, it was made on account of, and at the risk of, the complainant, there would be no difficulty in sustaining the appellees' view of the case ; for in such case the appellant, in effect, would be buying of his firm every time goods were shipped. We cannot, however, see this in the proof. After the violation, by the complainant, of the instruc-

tions to remove the goods from Roemer & Schultz, and his explanation of his action after his return, he was told by his partner, Ulman, that if he insisted on continuing the business relations with Roemer & Schultz, they had "better have an understanding and talk about it:" Yet there was no further understanding, for Ulman says in his testimony, so far as he was concerned, "it rested there." While doubting the wisdom of further consignments, the Goldsboroughs did not *insist* on its being stopped. William Goldsborough says "the matter was left almost entirely with Forster;" and Charles says, "I left it *entirely* with Mr. Forster, presuming he would not take undue risks at our expense ; I knew also that the laws of Louisiana were very stringent with consigned goods that were not paid for, and I presumed he was putting all the safeguards around any *further transactions we made with Roemer & Schultz.*"

It was admitted by the appellant, and it is no doubt the law, that a majority of the partners could, by positive protest, have controlled him, and made the transaction his own ; but it is very clear to us, that there was no such majority action on the subject, as to make the appellant originally liable for all consignments to Roemer & Schultz. There were eleven shipments of goods to them after the alleged protest, and all the payments and notes on account of them, went into the firm as and for their use, and on their account, and not on account of the complainant ; and the books of the concern so showed ; and it was not thought of, Mr. Ulman testifies, that if the transactions proved profitable, the appellant was to reap the sole benefit of them.

After the failure of Roemer & Schultz, a compromise was effected, by which they paid thirty-five per cent. of the amount due from them, to Ulman, Goldsborough & Forster. This settlement, it is contended, was made wholly on account of the complainant and by him, and

that he took notes from Schultz to himself individually for a portion of the balance due after deducting the thirty-five per cent. paid ; and thus it became an executed contract. Here, again, we think the proof fails to establish the appellees' contention. The thirty-five per cent. was all paid to the firm and was credited on their account against Roemer & Schultz. The settlement at that rate was made with the knowledge and acquiescence of the others, and after especial consultation with Ulman, the financial manager of the firm ; though he says he understood Forster was to make the balance good. That William T. Goldsborough thought the firm would lose is evident from his inquiry of Forster, to which he himself testifies, *"how much the firm would lose."* The actual treaty for settlement, and settlement, was conducted by Forster, who in the name of the firm, by letter, promised receipt in full on payment of the compromise amount. It is beyond doubt, that Forster did *say* he would assume the payment of that debt ; and because he so designed on same terms, he asked and got from Roemer his individual notes for $2,100, in addition to the amount paid the firm in the compromise. One of these notes for one thousand dollars, was endorsed by Forster to his firm, and went to bank for collection, but it was not paid ; nor was anything paid ; and it does not appear, that, intrinsically, these notes were worth a farthing. It is absolutely certain, from the evidence, that there was no consideration whatever moving from the partnership to support this contract, and if it be an executed contract, as insisted, there must be some contract certainly and definitely agreed upon shown, which could become executed by the subsequent action of a party to it.

It is evident that the learned Judge, who decided the case below, understood the evidence differently from the way we do ; for he has passed a decree, in effect, enforcing the specific performance of the proposal of Forster, as

if it were a contract, whereas the proposal had never been accepted, and the answer shows was not agreed to.

Forster admits, that when Roemer & Schultz failed, he said to an employé of the firm, he would assume that debt to prevent hard thoughts, and to preserve harmonious relations with his co-partners. They had differed with him as to the safety of dealing with Roemer & Schultz, and had reluctantly yielded to the continuance of business relations with them. Hence, he said what was imputed to him; but he coupled with it the further statement, that before it was charged to him he must be allowed the profits on the goods, or in other words the goods at cost prices. This qualification is not contradicted in the testimony. The bare statement to an employé that he would assume the debt, and direction to charge the same to him would not have made a contract with his partners. However praiseworthy the motive prompting to such statement or direction, such *motive* would not form a consideration to support a contract, even, if under its influence, the statement had been made to the partners. *Anson on Contracts,* 79.

Ulman testifies that he is uncertain from which of the employés he received the information that appellant had assumed the debt; but that after such information received he had a talk with Forster, in which Forster had personally informed him he assumed the debt; but at the same time said that before he was charged with the account, he must be credited with the profits on the goods shipped to Roemer & Schultz; or as Forster puts it, must be charged with them at cost prices. Ulman testifies, that *he* agreed to this proposition for *himself;* but he explicitly confines his assent to *himself;* so that it did not bind anybody else. We have looked in vain through the record for any testimony indicating an acceptance of Forster's proposition by any of the partners but Ulman. The books contain no entries tending to prove any such acceptance. The ac-

count of Roemer & Schultz is credited with the amount paid in the compromise, but it stands unclosed. Forster is nowhere, on them, charged with the claims or the goods. The books therefore, so far as they indicate anything, indicate that Forster's proposition had not been accepted; for had it been, the books surely would have been made to conform to the agreement. It is a significant fact, also, that the written agreement of dissolution directs Ulman to settle with the partners according to the charges against them on the books, and to pay and distribute the assets accordingly. The agreement of dissolution having referred to the charges on the books, and made them the basis of settlement *inter sese,* the condition of the books must have then been understood and accepted as properly exhibiting the true situation of each partner in relation to the firm. Some unsatisfactory explanation of why the books did not charge Forster with the claim, has been attempted; but not a word of explanation why the account was not credited with the profits in the Roemer & Schultz transactions, if that was agreed on, as the decree assumes it was. Mr. Charles Goldsborough says, he inquired why the charge was not made, and directed it to be made; but he does not say he directed the profits in the transactions to be credited to Forster, nor anything like it, or even about it. It is evident that Forster's proposition, as made, was never accepted. No better proof of that is needed than the fact, that, after dissolution, the claim was charged against Forster without abatement for profits; and that this course is defended in the answer which avers an *unqualified* assumption of the Roemer & Schultz claim by the appellant. The testimony of the several partners is entirely in the same direction.

If the proposition of Forster, to charge him with the claim and to credit him with the profits, or in other words charge him with the goods at cost prices, had been accepted, it would have been equivalent to an original

Forster *vs.* Ulman, *et al.*

purchase of the goods at cost prices from the firm, and the contract would have possessed all the elements necessary to make it good. There would have been a consideration; and the contract could have been enforced in the way it was decreed. In conclusion, it is enough for us to say, we are unable to find anything in the record to justify such a finding. We cannot make a contract for the parties. All the Court can do is to enforce one that is certainly made—to the terms of which all the contracting parties have assented. Although the order appealed from, may commend itself as effecting a just settlement of the controversy, we cannot affirm it, because we cannot find, from the proof, that the parties ever agreed to it. It is too late for the appellees to say now, that they are willing to stand by that decree which differs from their contention. They did not accept the appellant's proposal, and he was driven into Court to assert his rights because of it; and he cannot be forced to adhere to an offer which they had effectually rejected. The decree must be reversed, and the cause remanded to the end, that injunction may issue as prayed; and that an account may be taken in which the Roemer & Schultz debt, so far as it remained unpaid, shall be treated as a loss to the firm, and the appellant may be awarded his proper proportion of the assets and money of the firm.

*Reversed and remanded.*

(Decided 9th March, 1886.)