WILLIAM H. ARMSTRONG *vs.* J. IRVIN BITNER.

*Agreement—Sale of Good-will.*

A partner in a firm engaged in the fire insurance business, who sells all his interest in the firm, together with the good-will of the firm, to his copartner, and covenants not to engage in the fire insurance business within a certain locality, or solicit business for any fire insurance company, for a period of two years from a certain date, has the right, after the expiration of that time, to resume the fire insurance business, and to solicit and advertise in the usual way.

And such partner, after he has resumed the fire insurance business, is entitled to us in the prosecution of such business, the names of the policy holders insured by the firm, that he obtained from the books of the firm before he sold his interest therein.

APPEAL from the Circuit Court for Washington County, in Equity.

The case is stated in the opinion of the Court. The following portions of the agreement, referred to in the opinion, will suffice for an understanding of the case:

This agreement, made this 20th day of March, 1886, by and between William H. Armstrong and J. Irvin Bitner, both of Washington County, Maryland :

Whereas, by agreement dated the 8th day of October, 1877, the said William H. Armstrong and J. Irvin Bitner, covenanted and agreed with each other, that they should be partners in the selling and buying of real estate and in the general insurance business, under the terms and provisions in said agreement fully set forth.

And whereas, it was provided in said agreement that said partnership may be dissolved by either party upon three months notice given to the other party.

And whereas, the said notice of such intended dissolution was duly given, and it has been mutually agreed between the said William H. Armstrong and the said J. Irvin Bitner, that the said partnership shall be dissolved and ended on the first day of April, in the year eighteen hundred and eighty-six.

And whereas, the said William H. Armstrong proposes to continue in the said general insurance business on his own account, on and after the date of the said dissolution, in addition to other business in which he is now or may hereafter be engaged.

Now, therefore, this agreement witnesseth, that the said J. Irvin Bitner does hereby covenant and agree, to and with the said William H. Armstrong, that upon the payment to him upon the said first day of April, in the year eighteen hundred and eighty-six, by the said William H. Armstrong, of the sum of fifteen hundred dollars, which said sum the said William H. Armstrong covenants and agrees to pay to him at that date, that he, the said J. Irvin Bitner, will sell, transfer and assign to him, the said William H. Armstrong, all his interest in the said firm of Armstrong and Bitner, together with the good-will of said firm, in so far as the same relates to and is connected with the business of insurance from loss by fire or lightning of any and all kinds of property; and that he will not engage in, be connected with, or interested in, the business of such fire insurance, or in the establishment of any fire insurance agencies in Washington County, Maryland, for the period of two years from the said first day of April, in the year eighteen hundred and eighty-six, and that he shall and will not, for said period of time, within said Washington County, Maryland, solicit business for any fire insurance company or any agent thereof.

Second. That all books and papers belonging to the said firm of Armstrong and Bitner, in so far as they relate to

the business of fire insurance, shall belong to and be the absolute property of the said William H. Armstrong, with the right, however, reserved to the said J. Irvin Bitner, of free access to said books at any time for the purpose of settlement of the business of the firm of Armstrong and Bitner, or to enable the said J. Irvin Bitner to close any account due to him and which may be therein contained.

Fifth. That nothing contained in this agreement shall be construed to interfere with the right of either party hereto to continue in the real estate business in said county, or to engage in any other pursuit, except that the said J. Irvin Bitner shall not engage in the fire insurance business, as hereinbefore set out.

Sixth. That all sums of money due or payable to either the said William H. Armstrong or the said J. Irvin Bitner, for moneys advanced by them respectively, to the fire insurance companies of which they are agents, on account of premiums on policies or renewals of policies for policy holders, shall be collected by and belong to such partner as may have paid the same, and as they are severally collected they shall be entered upon the cash book of the firm of Armstrong and Bitner.

Seventh. All sums of money due and payable to the firm of Armstrong and Bitner, shall be collected by William H. Armstrong, and after the payment therefrom of all debts owing by the said firm, any balance of money shall be divided between the said William H. Armstrong and the said J. Irvin Bitner equally, and in the event of there not being sufficient money for the payment of the indebtedness of said firm in full, any such deficiency shall be paid by said Armstrong and Bitner equally.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, ROBINSON, BRYAN, and McSHERRY, J.

*Alexander Neill*, and *Alexander Armstrong*, for the appellant.

*J. Clarence Lane*, and *Henry H. Keedy*, for the appellee.

STONE, J., delivered the opinion of the Court.

Armstrong and Bitner were in partnership in the real estate and fire insurance business in Washington County, Maryland. In March, 1886, they dissolved the partnership, both as to the real estate and fire insurance business, the dissolution to take effect on the 1st of April, 1886, as will appear by the agreement which will be reported in the statement.

Armstrong, the complainant, filed a bill charging the defendant, Bitner, with a violation of this agreement in several particulars. The most important alleged violation of the agreement consists in the fact that *after the expiration of the two years from the first of April*, 1886, that is to say, subsequent to the 1st April, 1888, Bitner established a fire insurance agency in Washington County, and *solicited custom* from the old customers of Armstrong & Bitner, and who, since the dissolution, had been dealing with Armstrong, the complainant. Whether such solicitation was a breach of the agreement will first be considered.

It is certain that the agreement that he voluntarily made with Bitner is the measure of the complainant's right, and we must first ascertain the true meaning and construction of that agreement before we can determine that any right of his has been infringed upon.

The defendant, Bitner, agreed to sell to the complainant, Armstrong, all his interest in the firm of Armstrong and Bitner, together with the good-will of said firm, as far as the life insurance business was concerned, and *covenanted* that he would not engage in the fire insurance business *in Washington County, or solicit business* for any

fire insurance company, for the *period of two years from the 1st of April,* 1886.

Is it not a perfectly fair and legitimate construction of this agreement that, after the expiration of these two years Bitner, the defendant, had the perfect right? The terms of this well-considered agreement *expressly* limited the restraint of engaging in the fire insurance business, and of *soliciting* business, to the term of two years. After that time the defendant, Bitner, was at liberty to engage in the fire insurance business just as any other citizen of Washington County had the right to do. There is nothing in the terms of the agreement to indicate that his right to engage in such business was only a limited right; that is to say, while he had the right to establish an office and advertise his business that he should be forever debarred from the privilege of soliciting business, either in person or by private letter. Every man who is engaged in a legitimate and useful business has the unquestioned right to promote and extend that business in every fair and honest manner. He has the right to bring it to the notice of the public by advertisements in the press, by private letters, or by personal solicitations. This is the right of every citizen. But he may, for a valuable consideration, waive or abandon this right, certainly within a limited area, or for a limited time; but before he can be held to do so, in favor of another, there should be no reasonable doubt of his intention to do so. It should not be left to inference.

Personal solicitation, or by letters directed to individuals, are the usual means resorted to by insurance agents in order to get policies taken in the companies they represent. The agent that would rely solely upon advertisements in the public press, or a sign over his office door, would probably transact an extremely limited business. When, therefore, Bitner agreed not to solicit business for two years, he was evidently looking forward

to re-engage in the fire insurance business after the expiration of that time, and when he did, he hardly intended to deprive himself of the usual means of making his agency profitable. Armstrong and Bitner were in partnership in the real estate as well as the fire insurance business. By the fifth clause in the agreement Bitner was at perfect liberty to engage at *any time* in the real estate business, and he was only restricted from engaging in the fire insurance business for two years.

The case of *Hanna vs. Andrews*, 50 *Iowa*, 462, is very similar to the one before us. In that case Andrews sold to the appellant his interest in the real estate business and law practice in the town of E. ' *The sale included the good-will*, and Andrews agreed not to engage in either the real estate business or the practice of law in that town for three years. After the expiration of the three years Andrews resumed the same business, and personally solicited some of the customers of the old firm, and who had continued to deal with the appellant, Hanna, after its dissolution, and some of these old customers went back and dealt with Andrews, and Hanna brought his action. In deciding against the appellant the Court said :

"By the terms of the appellee's contract it was allowable for him after three years to re-engage in the land agency business, and the only question is as to what extent he may do so. It appears to us that, when the appellant provided for the return of the appellee to the business after three years, he opened the door to the appellee to come in and compete with him in every respect. The appellee, if applied to, could certainly accept the agency of the lands in question. He could certainly compete for the agency by general advertisement, by acquaintance, and by fidelity to business. The Courts, we think, could not properly undertake to draw the line between such competition and that which should be carried on by more or less direct solicitation."

And so we think that when the appellant in this case agreed .that after the expiration of two years Bitner might resume the business of an insurance agent, he gave him full liberty to compete with him in every respect· that any other insurance agent could' legitimately do. There can be no doubt that by the terms of the agreement Bitner was at liberty after the expiration of the two years to compete with the appellant for business in most respects, and there is nothing in it to show that he could not compete fully. We cannot think that it was the intention of these parties, that when Bitner resumed' business he should be deprived of any of the ordinary means for its successful prosecution.

The next question presented by the record is the complaint that the defendant, Bitner, before the expiration of the two years from the 1st of April, 1886, was *indirectly* engaged in the fire insurance business in Washington County.

It is enough to say of this charge that the evidence utterly fails to sustain it.

The third and only remaining charge is that the defendant, *before the dissolution* of the firm of Armstrong & Bitner, made extracts from the books of Armstrong & Bitner of the names of the policy-holders that were insured by that firm, and is now using them for the purpose of soliciting business. This is admitted by the answer, and is a conceded fact in the case.

What we have said about the main question in this case, practically disposed of this point.

During the existence of a partnership, one partner has the undoubted right to make extracts or memoranda from the books of the firm. These extracts or memoranda he has equally the right to use in the prosecution of another distinct or legitimate business. There was nothing secret or confidential in the list of names that Bitner took. He could have obtained precisely the same infor-

Armstrong *vs.* Bitner.

mation from the companies themselves, with, however, less convenience to himself. His agreement only prohibited him from using the knowledge he derived from these extracts, directly or indirectly, to the detriment of the business of Armstrong for the period of two years, and this agreement Bitner seems to have kept.

Besides all this, it would be nugatory for a Court of equity to attempt to restrain a party from using information he already possesses, and which he certainly could obtain from other sources, than those complained of. If Bitner had the right to compete fully with Armstrong (and we have said he had) he had the right to use all the information he had, in such competition. The decree must be affirmed.

*Decree affirmed.*

(Decided 11th June, 1889.)

BRYAN, J., filed the following dissenting opinion, in which Judges ROBINSON and McSHERRY concurred.

There has been a good deal of discussion in the Courts on the questions which were debated at the bar. And the conflict in the decisions has been very great. Very opposite opinions have been declared from the Bench as to the rights acquired by the purchase of the good-will of a business, and even as to the meaning of the term. Attempts have been made to formulate rules and definitions, which should measure, as by a geometrical scale, the transactions occurring in the different departments of business, although they are marked in their details and in the mode of their management by such a vast variety of features.

It is more to the present purpose to ascertain the just construction of the contract from which this controversy has arisen. In this instrument, Armstrong and Bitner describe themselves as "partners in the selling and buy-

ing of real estate, and in the general insurance business;" and Bitner sells to Armstrong "all his interest in the firm of Armstrong & Bitner, together with the goodwill of said firm in so far as the same relates to, and is connected with, the business of insurance;" and he also covenanted that he would not engage in, be connected with, or interested in, the business of such fire insurance, or in the establishment of any fire insurance agencies in Washington County, Maryland, for the period of two years from the first day of April, eighteen hundred and eighty-six, and that he would not for said period of time within Washington County, solicit business for any fire insurance company, or any agent thereof. It was also covenanted that all books and papers belonging to the firm of Armstrong and Bitner, in so far as they related to the business of fire insurance, should belong to and be the absolute property of Armstrong, with the right reserved to Bitner of free access to the books at any time for the purpose of settlement of the business of Armstrong and Bitner, or to enable Bitner to close any account due to him which might be contained in them. It must be evident that the purpose of the contract was to denude Bitner of all interest in the business, and to invest Armstrong with it as fully as it had formerly belonged to the partnership. Armstrong was to have the business with every incident and advantage belonging to it; all the means and appliances for conducting it successfully; every benefit which had accrued to the old firm from the reputation which it had established, and from every other circumstance which enabled it to attract and retain the patronage of customers. According to the terms of the contract he was to pay Bitner fifteen hundred dollars, and he did pay this sum. No part of it was paid for the amounts due to the firm; for in a subsequent portion of the contract it was provided that the money due to the firm, when collected, should, after payment of its debts, be equally divided be-

Armstrong *vs.* Bitner.

tween the two partners. To secure Armstrong for a while from the effects of competition, Bitner stipulated that he would not, for the period of two years, engage in the same kind of business within the limits of Washington County. But it is not to be inferred from this stipulation that after the expiration of this time Bitner was at liberty to take from Armstrong that which he had sold to him. To what avail did Armstrong pay Bitner fifteen hundred dollars for the business, if the latter might take it from him. The modes of obtaining business are so many and so various that it may not be always practicable to detect and prevent the means used to seduce customers from those on whom they are in the habit of bestowing their patronage. Where a person, who has sold the good-will of his business, is entitled by the terms of the contract to carry on the same business in the same locality, it is difficult to mark the line which separates that which may lawfully be done from that which is in a violation of his contract. Good faith requires that he should not nullify his grant, or derogate from it; that he should not resume that which he has sold; and yet by contract he has a right to pursue his business; and the legitimate pursuit of his business may result in attracting the customers of the old firm. In this case Bitner is charged with making personal solicitations to the customers of the old firm and with using extracts from their books, which show the names of policy holders insured by them, so as to facilitate these personal applications. Such conduct surely tends to destroy the value of the good-will. It appears to me that Armstrong is entitled to an injunction to protect him in the enjoyment of rights which he bought and paid for.

The bill of complaint in this case prayed for such an injunction, and to the extent indicated it ought to have been decreed. The opinions in *Ginesi vs. Cooper*, 14 *Chancery Division*, 596, and *Angier vs. Webber*, 14 *Allen*,

214, are founded on principles of reason and justice, which command my full approval.

(Filed 12th November, 1889.)