Asa L. Chamberlain *vs.* James W. Hemingway.

Third Judicial District, Bridgeport, October Term, 1921.
Wheeler, C. J., Beach, Gager, Curtis and Burpee, Js.

In the winding-up of an insurance agency partnership by a receiver, the court directed that no good-will of the business should be sold. Both members of the former firm then continued in business as individuals, each representing in all cases but one the same insurance companies which had formerly been represented by the firm. *Held* that either of the former partners was free to solicit for himself the business of former customers of the firm, and to that end might make and use a list of such customers.

At the receiver's sale the plaintiff, one of the former partners, purchased the books of the firm, among which were policy and expiration records containing information as to the policies written by the firm, which was highly advantageous in seeking renewals of policies as they expired. Each insurance company had such information from the firm as to policies written in such company. The defendant partner, prior to the sale, had made partial memoranda from the firm records which he later used to his advantage, together with information which he obtained directly from each

insurance company, in seeking renewals of policies written by the firm. The plaintiff brought action for an injunction and an accounting, claiming that the defendant had infringed upon his exclusive property-rights in the information contained in the records he had purchased. The court declined to find any custom preventing the companies from imparting to others the information they had. *Held* that as to the information obtained by the defendant from the companies, there was no infringement; but as to the information derived from the firm records, the defendant was violating the exclusive right of the plaintiff, as purchaser of the records, to the benefit of the mental labor expended in making a compilation more valuable for consultation than the original sources of information, and for such violation he must account.

Argued November 2d—decided December 23d, 1921.

ACTION to restrain infringement of property-rights in information contained in business records, and for an account, brought to and tried by the Superior Court in New Haven County, *Webb, J.;* facts found and judgment rendered for the defendant, from which plaintiff appealed. *Error in part and cause remanded.*

It appears from the finding that the plaintiff and defendant were formerly partners in the transaction of a general insurance business in the city of New Haven. During its existence the firm was appointed agent of a number of fire insurance companies, and also purchased the business and records of another insurance agency doing business in New Haven.

The policy and expiration records of an insurance agency are an important aid in its business, and the firm of Chamberlain & Hemingway devised and used a peculiarly convenient and advantageous record of the unwritten parts of all insurance policies which they wrote, so arranged chronologically that the firm had from day to day and month to month full information as to all policies which were about to expire. By the custom of the business the firm was allowed, subject to some restrictions, to distribute the insurance which it wrote among the companies for which it acted, at its

discretion; and for that reason, also, the compiled information contained in these policy and expiration records was convenient and valuable in seeking renewals, and was advantageous to the firm and to its customers. Each of the insurance companies represented, required the firm to furnish a carbon copy of the unwritten portions of policies allotted to and issued by the company.

In December, 1916, the partnership was dissolved at the instance of the defendant, who asked for and obtained the appointment of a receiver to wind up its affairs. The receiver applied to the Superior Court for advice as to whether the policy and expiration records and the good-will of the business should be inventoried and sold. He was instructed not to inventory or sell the good-will, but both partners agreed, and the court ordered, that the above-described policy and expiration records embodied in twelve monthly binders should be sold; and with other books they were sold by the receiver to the plaintiff for $4,100, after the defendant had bid $4,000.

Upon the failure of the partners to come to an agreement, and the appointment of the receiver, each of the fire insurance companies represented by the firm formally revoked the joint agency of Chamberlain & Hemingway as partners, and each company, with one exception, appointed Chamberlain and Hemingway, separately and individually, as its agents in New Haven.

Thereupon Hemingway, as such agent, attempted to secure for himself the business of former customers of the firm. In the pursuit of their business he is charged with infringing upon the alleged exclusive property-rights of the plaintiff in the information contained in the partnership records purchased by him. The infringement, as claimed, consists in the use of a list of customers of the firm, the use of copies of some of the

partnership records, and in obtaining from the several insurance companies, and using, the information contained in the carbon copies of unwritten portions of policies which the firm was required to deliver to their respective principals. The findings of the court as to these matters are as follows: "23. Defendant Hemingway on or about January 15, 1917, opened a separate office and immediately began active efforts to secure for himself the business of the former customers of the firm. He called upon such customers and examined the policies held by many of them, making notes of the information thus obtained. He also sought and obtained from each of the companies full information of approaching expirations, and has since continued to obtain such information from the companies. Prior to the date of the sale by the receiver, Hemingway was receiving from the Globe Indemnity Company and several of the fire companies regularly scheduled lists of approaching expirations. . . . 27. Subsequent to December 12th, 1916, Chamberlain caused to be prepared, in the office of the firm, a list of its customers with their addresses for his own individual use. Hemingway requested Chamberlain to furnish him a carbon copy of said list, which he declined to do. Whereupon Hemingway caused such a list to be prepared for his own use which has remained in his possession. Chamberlain made no objection to Hemingway's having and using said list. 28. Prior to December 12th, 1916, and without reference to the dissolution or any subsequent controversy, Hemingway made certain partial and informal memoranda from the books and records of the firm, some of which memoranda were in his desk in the office of the firm, and were on January 15th, 1917, removed by him with other personal papers. They had been made by him from time to time to ascertain the course of business in certain of its aspects,

such as the amount of business written by a certain solicitor employed by the firm, the new business written during the previous year, the business placed with one particular company during a period of time, and similar objects of inquiry. These memoranda included the names of certain of defendant's customers, amounts of premiums, and in some instances the dates when policies were issued or would expire, but they none of them contained all the data necessary for writing renewals of the policies referred to therein. 29. Such memoranda were at request of plaintiff produced by defendant at the trial, had admittedly been used by him to some extent in connection with information secured by him as aforesaid from the companies and from the insured. . . . 30. The use of each class of said memoranda, including said list of customers, has been of value and assistance to defendant in soliciting the business of the persons who were customers of the old firm."

*Harrison Hewitt,* with whom was *Philip Pond,* for the appellant (plaintiff).

*Leonard M. Daggett* and *David L. Daggett,* for the appellee (defendant).

BEACH, J.  By the express order of the court, the receiver who wound up the affairs of the firm of Chamberlain & Hemingway did not include any supposed good-will of the business among the assets sold. It is therefore conceded, independently of the rule announced in *Cottrell* v. *Babcock P. P. Mfg. Co.,* 54 Conn. 122, 6 Atl. 791, that the defendant was left free to solicit for himself the business of former customers of the firm. It seems to us to follow that the defendant had a right to make and use a list of such customers; and the

finding indicates that such was the belief of the parties at the time of the dissolution, for both the plaintiff and the defendant openly made such copies before the date of the receiver's sale, and neither of the prospective purchasers of the records of the firm objected thereto. "Included in good-will is the right to use lists of customers. The sale of good-will passes to the purchaser such a list of customers and correspondents of the house." Nims on Unfair Competition & Trademarks (2d Ed.) p. 34. Upon the other hand, if the good-will is not sold, or from the nature of the business is not assignable, the same right to use a list of customers must remain in the former owners of the business after a sale of the other assets—unless they have agreed not to compete with the purchaser. *Cottrell* v. *Babcock P. P. Mfg. Co., supra.*

As to the alleged wrongful use of the information contained in the carbon copies of the written portions of policies, which copies the firm was required to furnish to its principals, it is apparent that the information contained in any one carbon copy did not belong exclusively to the firm of Chamberlain & Hemingway. By turning over these carbon copies to the insurance companies the firm lost control of the information contained therein in point of form as well as of substance. And since the court has expressly declined to find any custom to the contrary, the companies had the right to impart the information to others in the form in which they had demanded and received it. Besides, it was for their interest to assist the defendant in getting or keeping the renewal business of such former customers of the firm as might not choose to do business with the plaintiff.

The common-law property in unpublished compilations of items of information derived from sources open to others, rests upon the right of the compiler to retain

for himself the exclusive benefit of the mental labor expended in making the compilation more valuable for consultation than the original sources of information. The plaintiff, as purchaser of the records of the firm, bought that advantage over his former partner and prospective competitor, and he is entitled to retain it. It is, however, clear that the defendant, in getting his information piecemeal from these carbon copies in the hands of the insurance companies, made use of the original sources of information, and did not infringe upon the exclusive right of the plaintiff, as purchaser of the records of the firm, to the benefit of the mental labor expended in collecting and arranging the identical items of fact into a compilation more convenient and advantageous for use.

The use by the defendant in competition with the plaintiff of memoranda taken directly from the compiled expiration records of the firm, presents an entirely different question. It is true that these memoranda, being taken by the defendant without any reference to the dissolution of the firm, and for use in the partnership business, were not wrongfully made. Nevertheless, to the extent that they possess the quality of being more useful for consultation than the original sources of information, they remained the property of the firm until it was wound up. The defendant could not rightfully have sold these memoranda to a rival insurance agency before the dissolution and winding up of the firm. After the receiver's sale, the defendant stood toward the plaintiff in the position of a vendor of the original compilations. The sale was by order of court, but the receivership proceeding was instituted by the defendant for the very purpose of having such a sale made; and the finding makes it clear that both plaintiff and defendant, in bidding against each other at the receiver's sale, recognized that the owner of

these records would have a substantial advantage over the other partner in the anticipated competition between them as individual agents for the insurance companies formerly represented by the firm. This advantage consisted as much in the right of the owner to exclude his competitor from the use of the compilation, as in his right to use it himself.

Under these circumstances the defendant could not equitably have been permitted to bid up the price of the original, pocket his share of the price, and at the same time hold out a complete copy of the compilation for his own use in competition with the purchaser. And this would be true, though the copy were originally made for a proper purpose. Since he could not do this in whole, it must follow that he cannot do it in part.

The case of *Armstrong* v. *Bitner*, 71 Md. 118, 17 Atl. 1054, 20 id. 136, is especially relied on as authority for the proposition that one partner has a right to make extracts from the books of the firm and to use them after dissolution of the firm in competition with the purchaser of the partnership records. As applied to the facts before the court in that case the proposition was sound, and entirely in accord with the views already expressed; for the point decided was, that since the defendant was entitled by the terms of his contract with the purchaser to solicit the business of the old customers of the firm after the expiration of two years, he was entitled to use for that purpose a list of customers taken from the firm books before its dissolution.

We conclude that the trial court erred in not awarding some relief to the plaintiff in respect of the wrongful use which the defendant made of memoranda copied from the expiration records of the firm. Whether the defendant is still making any substantial use of these memoranda, or of copies of them written into his own expiration records, does not clearly appear from the

finding; but it does appear that the plaintiff is entitled to an accounting in respect of business obtained by the wrongful use of these memoranda in their original form or as copied into his own expiration records.

There is error in part, and a new trial is ordered as to the cause of action stated in the first count of the complaint, in so far only as the same is based upon the use by the defendant of memoranda or copies taken from the expiration records purchased by the plaintiff at the receiver's sale.

In this opinion the other judges concurred.