## EUGENE F. GUERAND *vs.* FRANCOIS DANDELET.

*Practice in the Court of Appeals—Contracts in Restraint of Trade or Business—What Constitutes a Breach of the Contract—Good-will of a Trade or Business.*

On an appeal from an order granting an interlocutory injunction, the Court of Appeals, in determining the propriety of the order, is confined exclusively to the bill and the exhibits filed therewith.

The proprietor of a certain dyeing and scouring establishment leased the same for the term of ten years, and, for a valuable consideration, sold the custom and good-will thereof, together with the right to use the same name and style as theretofore, and carry on the business of dyeing and scouring; he likewise covenanted that he would not, at any time thereafter, exercise or conduct, in the city of Baltimore, the trade or profession of a dyer or scourer, nor, directly or indirectly, compete with the lessees and vendees for the good-will and custom so sold. HELD:

1st. That this covenant was valid, not being too comprehensive in its restriction, and its violation would be restrained by injunction.

2d. That the re-establishment or resumption of the business in the name of the son, was a breach of the covenant of the father, the allegation of the bill, which must be taken as true, being, that the name of the son was used as a mere cover and blind to conceal the interest of the father.

The parties to whom the sale of the good-will and custom was made, had entered into a partnership which was to continue during the term of the lease. Before the expiration of the time so limited, one of the partners sold and conveyed all his interest in the partnership and the property thereof to his co-partner, who, after the expiration of the lease, and upon his failure to procure its renewal, continued the business of dyeing and scouring at a house adjoining. HELD:

That the circumstance of the dissolution of the partnership did not release the covenantor from his obligation to observe his covenant. The party continuing the business became entitled to the benefit of the covenant by virtue of the articles of co-partnership between himself and his co-partner, and the subsequent assignment of the latter.

The good-will of a trade or business is an interest which may be valued as between partners, and may, therefore, be assigned with the premises and the rest of the effects, by the partner retiring, to the one remaining in the business.

Guerand *vs.* Dandelet.

Contracts restraining the exercise of a trade or profession in a particular locality, when founded upon a sufficient consideration, are good and valid, if there be a fair and reasonable ground for the restriction    The restraint, however, to be lawful, must be confined within reasonable limits.

The adequacy of the consideration of a contract in restraint of any trade or business, will not be inquired into by the Court.    It is sufficient, if the contract show on its face a legal and valuable consideration.

APPEAL from the Circuit Court of Baltimore City.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, ALVEY and ROBINSON, J.

*Joseph S. Heuisler* and *Wm. Pinkney Whyte,* for the appellant.

The clause in the contract between F. Guerand and the appellee and Feuillan, if correctly construed by the appellee, as binding Guerand to forbear forever from carrying on the dyeing and scouring business in Baltimore city, was void as being in restraint of trade.    The time was unlimited, and the prevention of competition in the whole city of Baltimore was injurious to the public and void. *Ross vs. Sagdben,* 21 *Wend.,* 166; *Hitchcock vs. Coker,* 6 *A. & E.,* 438; *Pierce vs. Fuller,* 8 *Mass.,* 223; 1 *Smith's Lead. Cases,* Pt. 2, *p.* 648, 650.

But if the covenant were binding on F. Guerand, it was not binding on his posterity.    His son, the appellant, has a right to carry on the business, as it is admitted he is really the party carrying it on.

But the true construction of the clause is, that F. Guerand bound himself, *during the lease,* not to compete with the goodwill of that establishment while Dandelet & Feuillan were occupying that store, as his tenants under the ten year lease. The whole of the covenant is to be looked to in its construction.

There is an adequate remedy at law, if the contract has been violated, and equity cannot be invoked.

Guerand *vs.* Dandelet.

*Arthur Geo. Brown* and *George Wm. Brown*, for the appellee.

This is a proper case for the intervention and protection of a Court of Equity. *Am. Law Reg.*, Feb. 1870, 65, *et seq.*; *McClurg's Appeal*, 58 *Penna.*, 51 ; *Catt vs. Tourle*, 4 *Chanc. Ap. Cases*, 659 ; *Harrison vs. Gardner*, 2 *Madd. Ch.*, 198 ; *Williams vs. Williams*, 2 *Swanst.*, 253 ; *Butler vs. Burleson*, 16 *Vermont*, 176 ; *Beard vs. Dennis*, 6 *Indiana*, 200 ; *Palmer vs. Graham*, 1 *Pars.*, 476.

Contracts restraining the exercise of a trade in particular localities are valid, and the sufficiency of the consideration will not be inquired into. *Barney vs. Davis*, 2 *G. & J.*, 382 ; *McClurg's Appeal*, 58 *Penn.*, 51 ; *Catt vs. Tourle*, 4 *Ch. Ap. Cases*, 659 ; *Mitchell vs. Reynolds*, 1 *P. Wms.*, 181 ; *Davis vs. Mason*, 5 *T. R.*, 118 ; *Hayward vs. Young*, 2 *Chitty*, 407 ; *Bunn vs. Guy*, 4 *East*, 190.

Francois Guerand having covenanted that he would not, " directly or indirectly, compete with the aforesaid lessees and vendees for the good-will and custom sold," &c., cannot suffer or permit his house, No. 124 N. Howard street, to be used for a dyeing or scouring establishment, nor sell it with the knowledge that it will be so used ; and such business, by whomsoever there conducted with his assistance or connivance, is a violation of his contract. *Davis vs. Barney*, 2 *G. & J.*, 382, 401, &c.

The appellee being, by purchase, the absolute owner of the custom, good-will and name of Guerand's dyeing and scouring establishment, has a right to the name and franchise as against all the world. *Croft vs. Day*, 7 *Beav.*, 84 ; *Sykes vs. Sykes*, 3 *B. & C.*, 54 ; *Howe vs. Howe*, &c., 50 *Barb.*, 236.

On appeals from orders granting injunctions, the appellate Court is confined to the case made by the bill, and will not consider the answer. *Alexander vs. Worthington*, 5 *Md.*, 471 ; *Guyton vs. Flack*, 7 *Md.*, 398 ; *McCann vs. Taylor*, 10 *Md.*, 419 ; *Hyde vs. Ellery*, 18 *Md.*, 499 ; *Haight vs. Burr*, 19 *Md.*, 132.

ALVEY, J., delivered the opinion of the Court.

This is an appeal from an order granting an interlocutory injunction to restrain the appellant and his father, Francis Guerand, from carrying on a dyeing and scouring establishment, at No. 124 North Howard street, in the city of Baltimore, and from advertising the same in any newspaper, or by card, circular or otherwise.

In determining upon the propriety of the order appealed from, we are confined, on this appeal, exclusively to the bill and the exhibits filed therewith; for if the answer, which is required to be filed as a condition precedent to the right of appeal, could be taken into consideration, we should be reviewing the order by the light of other facts than those presented to the Judge below and upon which he acted. This would not be at all consistent with the exercise of mere appellate jurisdiction, to which this Court is confined.

The appellee, the complainant below, by his bill and exhibits, presented, we think, a clear case for the injunction that was granted. By the lease of the 17th of October, 1859, Francis Guerand, the father of the appellant, let to Jean Feuillan and the appellee his house and lot, No. 124 North Howard street, theretofore used as a dwelling, store and dyeing and scouring establishment, for the term of ten years, at an annual rent of $1,000; and in this lease we find incorporated an agreement by which the lessor sells to the lessees the custom, good-will, name and utensils then in, upon and about the leased premises, theretofore known as " Guerand's Dyeing and Scouring Establishment," together with the right to use the same name and style as theretofore, and carry on the business of dyeing and scouring, for the sum of $3,000, payable in instalments; and Guerand, the lessor, covenanted that, on the payment of the purchase money for the custom, good-will, name and utensils sold, he would not, *at any time thereafter*, " exercise or conduct, in the city of Baltimore, the trade or profession of a dyer or scourer, *nor directly or indirectly* compete with the aforesaid lessees and vendees for the good-will and custom sold as aforesaid."

Guerand *vs.* Dandelet.

The purchase money for the custom, good-will, name and utensils has all been paid, and the term of the lease has expired, and there has been no renewal of it. The co-partnership between the complainant and Feuillan, entered into at the date of the lease, has been dissolved, and upon such dissolution, Feuillan, in pursuance of the terms of the articles of co-partnership, sold and assigned to the complainant all his interest in the partnership and its property and effects. The complainant, shortly before the expiration of the lease, applied for its renewal to him, but the amount of rent asked being largely increased over the former rent, he declined to accept a renewal on the terms proposed to him; and, on having to surrender the premises at No. 124 North Howard street, he rented the premises next door thereto, and established himself, by a considerable outlay of money, in his regular business of dyer and scourer, where he has continued to carry on such business to the present time. And the ground of complaint now is, that since his removal from No. 124 North Howard street, Guerand has recently opened, or caused and permitted to be opened there, a dyeing and scouring establishment, with conspicuous signs and advertisements of the business, intended to re-call former customers; such signs and advertisements containing the name of E. F. Guerand, the son, as proprietor; but it is alleged that the use of such name is a mere cover and blind adopted with the intent to conceal the interest of the father in the establishment; that the capital employed in the business, as well as the property occupied by the establishment, belongs to Francis Guerand, and not to the son in whose name the business is apparently conducted. It is also alleged that the competition thus brought into existence is seriously injurious to the business of the complainant, and that it is in derogation of the contract with Francis Guerand of the 17th of October, 1859.

By the contract the restriction on the exercise of the trade in the city of Baltimore is plain and unequivocal. Guerand covenanted that he would not, *at any time thereafter*, be

engaged in the particular business, nor directly or indirectly compete for the good-will and custom sold. The restriction as to locality is limited, but as to time it is without any limit whatever; and it has been contended by the appellant that the whole covenant is void, because its observance would operate to the prejudice of trade and industry.

As a general rule, it is true, a contract, whether under seal or otherwise, in unlimited restraint of trade, or of any particular vocation, is absolutely void, as being contrary to public policy, as well as oppressive in its operation upon individual industry. This has been the law from an early period in the history of English jurisprudence, as is abundantly shewn in the elaborate judgment of LORD MACCLESFEILD, in the leading case of *Mitchel vs. Reynolds*, 1 *P. Wms.*, 181. But while this is the general rule, the same leading case just referred to fully establishes the principle that contracts only in partial restraint of any particular trade or employment, if founded upon a sufficient consideration, are valid and enforcible.

The restraint, however, to be lawful, must be confined within reasonable limits. " Where it is larger and wider than the protection of the party with whom the contract is made can possibly require," said the Court in *Hitchcock vs. Coker*, 6 *Ad. & El.*, 454, " such restraint must be considered as unreasonable in law, and the contract which would enforce it must be therefore void.". If the restraint therefore be general, and not confined to any particular locality, the shortness of the time for which it is imposed will not make it good. *Ward vs. Byrne*, 5 *M. & W.*, 548. But if it be reasonable as to locality, the fact that it is indefinite as to its duration will not affect its validity. *Add. on Conts.*, 100. " Contracts restraining the exercise of a trade or profession in a particular locality," says the author just cited, "are good and valid when there is a fair and reasonable ground for the restriction, as in the case of the sale of the good-will of a trade or business carried on in a particular locality, where the vendor covenants or agrees not to carry on the same business in the same

place, in opposition to the purchaser;". and he cites for this passage of his work the cases of *Prugnell vs. Gosse, Aleyn,* 67; *Broad vs. Jollyffe, Cro. Jac.,* 596; and 2 *Rolle R.,* 201.

It is objected to the present covenant that it is too comprehensive in its restriction; that, as it restrains the covenantor indefinitely as to time from exercising his trade at any place within the city of Baltimore, it is therefore void. But we perceive nothing in it to render it obnoxious to the objection. The authorities sustain restrictions more comprehensive than that imposed by this covenant; as in the case of *Green vs. Price,* 13 *M. & W.,* 695, where a perfumer sold to his co-partner his share of the business of the firm, and covenanted not to carry on the same business in the cities of London and Westminster, or within six hundred miles from those cities. The Court of Exchequer held the covenant to be valid as to the restraint of the practice in London and Westminster, but void as to the residue; and that judgment was affirmed in the Exchequer Chamber, after full argument. 16 *M. & W.,* 346. And in the case of *Atkyns vs. Kinnier,* 4 *Exch. Rep.,* 776, there was a covenant by a surgeon not to practice or reside at any time within two and a half miles of the plaintiff's residence in London, and such covenant was held to be valid, and it was declared to be no objection to it that it imposed the restriction during the life of the covenantor, "for that," said PARKE, B., "enables the good-will of the business to become the subject of purchase and sale." See also the cases of *Davis vs. Mason,* 5 *T. Rep.,* 118; *Bunn vs. Guy,* 4 *East,* 190; *Mallan vs. May,* 11 *M. & W.,* 665, where the restrictions were larger than in the present case, and yet the contracts were adjudged good.

This, it must be borne in mind, is the case of a contract for the sale of the custom and good-will, in connection with the utensils of an establishment, for a valuable consideration; and if such restriction as is attempted to be imposed by it be not allowed, the subject of the contract would never be saleable, as it could at any moment be rendered valueless by the com-

petition of the vendor. The general rule against covenants in restraint of trade is founded doubtless upon the policy of the law which favors trade and enterprise, and the reason of the exception engrafted upon that rule is, as was observed by MAULE, J., in *Rannie vs. Irvine*, 7 *Man. & Gr.*, 969, "that the exception is in futherance of the rule itself. If it were held that a party selling the good-will of a business could not restrain himself from using for his own profit that which he has agreed to sell, that would operate as a restraint of a very injurious kind." And, in the case just referred to, the assignor of a lease and the good-will of the business of a baker agreeing that he would not, during the term assigned, solicit the custom of or knowingly supply bread or flour to any of the customers then dealing at the premises, without the consent of the assignee, it was held not to be an unreasonable restraint of trade.

Whether the consideration for the restraint is adequate or not, is a question that the Court will not inquire into. It is sufficient that the contract shows on its face a legal and valuable consideration; but whether adequate or inadequate to the restraint imposed, must be determined by the parties themselves, upon their own view of all the circumstances attending the particular transaction. If it were otherwise, it would be the Court and not the parties, that would make the contract. All that the Court is required to do, in passing upon the validity of the covenant, is to determine whether the restraint is reasonable and consistent with law, and whether there be a legal consideration to support it. This is now the established doctrine, as decided in the cases of *Hitchcock vs. Coker*, 6 *Ad. & El.*, 439; *Archer vs. Marsh*, 6 *Ad. & El.*, 966; *Leighton vs. Wales*, 3 *M. & W.*, 551; *Pilkington vs. Scott*, 15 *M. & W.*, 657; *Sainter vs. Fergusson*, 7 *C. B.*, 716. And here there certainly appears a legal consideration for the covenant.

It was urged in argument, that the restriction should not, by construction, be extended beyond the period of the partnership between the parties to whom the lease was made, and

the custom and good-will were sold; and as the partnership terminated with the expiration of the term of the lease, the complainant individually, has no right to the relief sought in this case. In that, however, we do not agree. The vendor bound himself, for the period of his life, to refrain from all competition for the good-will and custom sold. And the circumstance that the parties to whom the sale was made, have dissolved their partnership, does not release the covenantor from his obligation to observe his covenant. The complainant has become entitled to the benefit of the covenant by virtue of the articles of co-partnership between himself and Feuillan, and the subsequent assignment of the latter. Good-will " is an interest which may be valued between the parties, and may, therefore, be assigned with the premises, and the rest of the effects, to the remaining partner, as an accompaniment of the ordinary good-will of the establishment." *Story on Partn.*, sec. 99. And in the case of *Hitchcock vs. Coker*, 6 *Ad. & El.*, 439, it was said, by Chief Justice TINDALL, speaking for the Court: "The good-will of a trade is a subject of value and price. It may be sold, bequeathed, or become assets in the hands of the personal representative of a trader. And, if the restriction as to time is to be held to be illegal, if extended beyond the period of the party by himself carrying on the trade, the value of such good-will, considered in those various points of view, is altogether destroyed." There is no reason, therefore, for holding the restriction to extend only to the time that the vendees continued their joint interest in the covenant.

The covenant being valid, the next question is, does the fact that the business has been re-established or resumed in the name of the son, avoid a breach of the covenant of the father? We think not. The allegation of the bill is, that the name of the son is used as a mere cover and blind to conceal the interest of the father. If this be so, as we are bound to assume on this appeal, the case is unquestionable. The father's covenant is that he will not, directly or indirectly,

compete for the good-will and custom sold to the complainant and Feuillan. This restrains him from the use of any means whatever whereby the value of the thing sold, and for which he has received his price, may be in any manner impaired or lessened. He can neither compete himself, nor employ or combine with others to do it. What he cannot do directly, he cannot do indirectly. And that is what was decided in *Davis vs. Barney*, 2 *Gill & John.*, 382. There the party selling out his coaches and teams on a certain road, obligated himself to withdraw all his pretensions to any part of the particular route, and pledged himself not to be concerned, directly or indirectly, in any line of stages in opposition to the vendees. And the Court, in construing the contract, and defining the extent of the restriction imposed, held, that the defendant could, not only not become interested in any opposition, but that he could not, in any manner, aid or become instrumental in setting up, or carrying on, an opposition line of stages; and that without such construction, the word "indirect," employed in the contract, would have no meaning or effect whatever.

But, it is contended, that if there be a breach of the covenant, the remedy at law is adequate, and, therefore, a Court of Equity should not interfere. To this proposition, however, we do not accede, as the authorities fully maintain the right and duty of a Court of Equity to restrain, by injunction, the violation of contracts of the character of the one before us. *Harrison vs. Gardner*, 2 *Madd. Rep.*, 198; *Williams vs. Williams*, 2 *Swanst.*, 253; *Whittaker vs. Howe*, 3 *Beav.*, 383; *Catt vs. Tourle*, 4 *Ch. App. Cases*, 659. We shall, therefore, affirm the order of the Court below granting the injunction.

*Order affirmed.*