LORENA A. STEELE, Guardian and next friend of JAMES H. STEELE, infant, and others *vs.* NICHOLAS W. STEELE.

*Verbal contract between Father and Son—Consideration— Proof.*

Where a verbal promise was made by a father that if his son would purchase a certain woolen factory then advertised for sale, he (the father) would contribute five thousand dollars towards the payment of the purchase money, the purchase of the property by the son upon the faith of this promise, and the liability thereby incurred, constitute a sufficient consideration to support the contract.    But such promise ought to be established by the clearest and most satisfactory proof.

APPEAL from the Orphans' Court of Carroll County.

This appeal is taken from an order allowing and passing the claim of the appellee, the nature of which claim is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, FOWLER, MCSHERRY, and BRISCOE, J.

*William P. Maulsby, Jr., Harry M. Clabaugh,* and *William P. Maulsby,* (with whom were *Joseph D. Brooks,* and *William A. McKellip,* on the brief,) for the appellants.

*Charles E. Fink,* and *James A. C. Bond,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is a claim of $5,000 filed in the Orphans' Court by the appellee against his father's estate.   As first pre-

sented, it was a claim for "amount due from making sale of Eldridge Mullinix's personal property, as per bill of sale; amt. due as per agreement for buying law books, and nine months time in studying same; amt. due for making settlements, drawing agreement, notices, consummating deals and services rendered at different times, as per agreement, from Jany. 1st, 1888, to Dec. 1st, 1890, $5,000." Such a claim as this for services rendered at different times, in making settlements, drawing agreements, consummating deals, buying law books, and studying law for the lump sum of $5,000, strikes us, to say the least, as an extraordinary claim. This claim, however, was withdrawn, whether by the appellee of his own motion, or by advice of counsel, does not appear, and in its place was filed the claim which forms the subject-matter of this appeal. This is a claim based upon a verbal promise by the father, that if the appellee would purchase a certain woolen factory, then advertised for sale, he, the father, would contribute $5,000 towards the payment of the purchase money, and, relying upon this promise, the appellee bought the property. The right of the appellee to enforce the payment of such a claim as this depends—first, upon whether the promise was in fact made by the father, and if so, was the property purchased by the son upon the faith of the promise? and secondly, was the purchase of the property upon the faith of this promise, and of the liability thereby incurred, a sufficient consideration to make it a binding contract?

First. We fully agree that a promise of this kind ought to be established by the clearest and most satisfactory proof. At the same time, however, no one, it seems to us, can read the testimony in the record without being satisfied beyond question that the promise was made by the father, and that the property was purchased by the son on the faith of the promise.

Mr. Gary, the trustee, by whom the property was advertised for sale, says that Mr. Steele, the father, came to

him before the day of sale to make inquiries as to the
terms of sale, and the value of the property.   Witness
told him that its value depended upon the ability of
the purchaser to manage and conduct the business;
that the present owner had not been successful, but
in the hands of a competent person he thought the
property would be valuable.   To this the father replied
by saying, he had no doubt as to the ability of his son
as a manufacturer; that he had served a long appren-
ticeship at the business, having contributed largely to
the success of Wm. J. Dickey & Sons, for whom he had
been the manager of the Wetheredville Woolen Mills.  He
then proposed to exchange a farm belonging to him, sit-
uated in Carroll County for the mill property, but this
proposition the witness declined.   After the sale he
came to the office of the witness with his son, and said,
as Nicholas had bought the property, he wanted to make
some arrangement about the deferred payments.   After
some further conversation he said his son would need
money to conduct the business, and wanted to know if
he could borrow money of the witness on collateral se-
curity.

Mr. Gassaway Watkins, a brother-in-law and neighbor
of Mr. Steele, the father, says the latter sent for him to
talk over the purchase of the property by his son, and
said he thought it would be the very property for Nich-
olas, as he understood the business thoroughly—that he
was anxious to get his son away from Wetheredville,
where he then lived; and further said he knew his son
was not able to buy it, but he was willing to help him to
pay for it.   Afterwards Nicholas came down to see his
father about the purchase of the property, and the latter
told him to buy the property if he could get it right,
and that he would give him $5,000 to start the mill and
buy the property.   After the sale, the father told the
witness that he was going to give his son $5,000 to help

him make the deferred payments. In addition to this there is the testimony of several other witnesses, to some of whom the father said before the sale, that he wanted his son to buy the property and that he had promised to give him $5,000 to assist him in the payment of the purchase money; and to others, after the sale, he said he must raise the money to pay for the property, and that "if he couldn't sell a farm, he would raise the money from some mortgages he held."

Such testimony as this,—and it is before us uncontradicted,—proves beyond all question that the promise was made by the father, and that the son, relying upon this promise, purchased the property. The father was a person of large means, and Nicholas was his only son. The property was a woolen mill, and he had implicit confidence in his son's ability to manage and conduct the business, and it was but natural that he should be willing and anxious to assist him in its purchase.

And this brings us to the question, whether the purchase of the property upon the faith of the promise on the part of the father, is a sufficient consideration to make it a valid contract. And in regard to this question, there cannot be, it seems to us, any difficulty. Without going through the long list of cases in which the question as to the sufficiency of consideration has been considered, it is sufficient to say, it is well settled that if one incurs a legal liability, as by entering into a contract with a third person, the liability thereby incurred is a sufficient consideration to support a promise by the person at whose request it was incurred. Thus, for instance, where a person contracts in his own name to purchase property upon the promise by another to provide the money to pay for it, the consideration is sufficient to support the contract. *Leake on Contracts,* 628; *Chitty on Contracts, p.* 64.

The case comes, we think, directly within the principle laid down in *Skidmore vs. Bradford, Law Rep.,* 8

*Equity Cases*, 134, in which the VICE-CHANCELLOR said: "If Edward Bradford were a mere volunteer, there is no principle on which he would be entitled to come to this Court to have the testator's intended act of bounty completed, and the balance of the purchase money paid out of the assets. But if, on the faith of the testator's representation, he has involved himself in any liability, or has incurred any obligation, he cannot be regarded as a volunteer, and if so, the testator's assets are liable to make good the representation on the faith of which the nephew has entered into this contract. * * * The case, therefore, is one in which the purchaser became liable to be sued, and incurred that liability on the faith of the representations of the testator, that he would give him the warehouse, which was the subject-matter of the contract, and would provide the purchase money."

The purchase of the property in this case by the appellee upon the faith of the promise made by his father to give him $5,000 to assist him in the payment of the purchase money, is therefore a sufficient consideration to support the contract, and the order must be affirmed.

*Order affirmed.*