## THE CITIZENS' TRUST AND DEPOSIT CO. *vs.* JOHN A. TOMPKINS.

*Suit by Trust Company to Recover From Its President Compensation Received by Him as Receiver Alleged to be Due to it Under By-Laws of the Company and an Express Agreement.*

In an action by a Trust Company against its former President to recover the amount of certain commissions received by the latter as the receiver of an insolvent Brewery Co., one count of the declaration alleged that under a mortgage deed of trust by the Brewery Co., to the Trust Co., the latter was authorized to apply in certain contingencies for the appointment of a receiver of the Brewery Co., and to nominate the same; that the plaintiff Trust Co., which was itself empowered to act as receiver, had upon the happening of the contingencies caused the defendant, its President, a salaried officer, to be appointed receiver; that under the by-laws of the plaintiff it was the duty of the President to accept such appointment and account to the plaintiff for the compensation received as such, but the defendant had refused to pay over the same. *Held*, upon demurrer, that this count fails to state a cause of action since the defendant's appointment was by the Court and not by the plaintiff and it makes no difference that the plaintiff made the

recommendation in consequence of which defendant was appointed, and the by-laws of the plaintiff company make no reference to the exercise of the duties of a receiver by the President, but simply prohibited him from accepting such office without the assent of the executive committee, and defendant was appointed in his individual capacity, his acts as receiver being under the order of the Court and not incident to his office as President of the plaintiff.

Another count in the declaration also alleged that the plaintiff company agreed to foreclose the mortgage deed of trust from the Brewery Co., without charge provided the defendant, its President, was appointed receiver and that he was so appointed upon his agreement to act on behalf of the plaintiff and to pay it such compensation as he would be allowed for so acting, that he had received compensation, but had refused to pay it to the plaintiff. *Held*, that this count fails to set forth any consideration for defendant's agreement to pay to plaintiff his compensation as receiver, because such promise was founded neither upon a benefit to the defendant nor upon any act or forbearance by the plaintiff, as the plaintiff possessed no vested right to be receiver itself nor the power of appointing the defendant.

Appeal from the Superior Court of Baltimore City (DENNIS, J.)

The cause was argued before FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Fielder C. Slingluff* and *T. Wallis Blakistone*, for the appellant.

*Bernard Carter* and *D. K. Este Fisher*, for appellee.

PEARCE, J., delivered the opinion of the Court.

The plaintiff in this case is a corporation created by chapter 374 of the Acts of 1898, under the name of "The Citizens Trust and Deposit Company of Baltimore," and was given power to accept and execute trusts of any and every description, and to act as receiver when duly appointed by any Court of this State. The defendant was its President, and while holding that office, he, in his individual character and capacity, was appointed by one of the Courts of this State having the power to make such appointment, receiver of the Maryland Brewing Company of Baltimore City, and was allowed by the

Court a large sum of money as compensation for his services as such receiver, and this suit was instituted to recover from the defendant the amount so allowed him, which the plaintiff alleges it was his duty *as its President*, to account for and pay over to it, but which he refused to do. The declaration originally contained eight counts, but the six common counts were stricken out by the plaintiff, leaving only the two special counts, the seventh and eighth, to each of which the defendant demurred. This demurrer was sustained with leave to plaintiff to amend, but this leave was declined, and judgment was entered on the demurrer for defendant for costs.

The seventh count alleges in substance that the Maryland Brewing Company of Baltimore City executed to the plaintiff a mortgage deed of trust to secure certain bonds issued by said Brewing Company, and that said deed of trust gave authority to the plaintiff, in certain contingencies, to apply for a receiver of said Brewing Company, and vested in the plaintiff, as a matter of strict right, the power to nominate such receiver to the Court; that these contingencies had arisen, and the plaintiff had applied to the proper Court, and had nominated the defendant as such receiver, and he had been duly appointed, that the defendant was at that time President of the plaintiff, and continued to be such during the receivership, and received a large salary for the performance of his duties as President; that under the by-laws of the plaintiff, it was the duty of the defendant as its President, to accept the position of such receiver when so nominated and appointed, and to account to the plaintiff for the compensation received by him as such receiver ; that he had received such compensation, and had been requested to pay over the same to the plaintiff, but had refused so to do. By agreement of counsel, certain extracts from the minutes and by-laws of the plaintiff were made part of the case on the consideration of the demurrer. Among these are the following: Resolution of Exeutive Committee February 25th, 1901, unanimously passed.

"Resolved, that the company's counsel be instructed to take all necessary steps to protect our interests in event of any one

applying for a receiver for the Maryland Brewing Company, and should said Brewing Company fail to meet their coupons maturing March 1st next, that the counsel be instructed to at once to apply for a receiver for the Brewing Company, and ask the Court to appoint Col. John A. Tompkins a receiver on behalf of this company."

Also, resolution of the Executive Committee March 4th, 1901. Present—Messrs. Tompkins, Adler, Hilles and Hamilton.

"Resolved, that the President be instructed to inform the Bondholders' Committee of the Maryland Brewing Company, that this company would, as trustee under the mortgage, make the sale of foreclosure without charge, provided he was appointed receiver."

Section 12 of the by-laws prescribes the duties of the President and Vice-Presidents in the usual general terms, providing, among other things, that the President shall "perform all acts incident to the office of President," and that in the absence or disability of the President, his duties shall devolve upon the first, second and third vice-Presidents in the order named, and in the absence or disability of all these, upon the chairman of the Executive Committee.

Section 13 of the by-laws declares, "no trusteeship, or office of executor, administrator, guardian, receiver, or committee, shall be accepted by the President, without the approval of the committee."

Section 15 provides that "the treasurer shall endorse all checks and drafts, sign receipts and acknowledgments for all money and other property of the corporation, and property of any description, belonging to other persons, in the possession of the company, and disburse the same under the directions and regulations of the Executive Committee."

The seventh count, as we have set it out herein, has been framed with much ingenuity and skill, for the presentation of a theory apparently novel, but when subjected to careful and serious examination, the objections to its soundness appear to us to be both numerous and convincing.

It is quite true that defendant's appointment as receiver did originate .in his nomination by the plaintiff, but the same is true of every receiver, the parties in interest always recommending to the Court those whom they desire, and such recommendations always receiving from the Court such consideration as they may deserve. But the right of nomination conferred in this case by the bondholders upon the plaintiff, could neither impair the power, nor control the discretion of the Court, nor could it bind any of the parties interested except themselves. But even if it could be seriously contended that the defendant's appointment was the concession by the Court of an absolute right in the plaintiff to designate a receiver, (and we did not understand the plaintiff's contention to go beyond the right to nominate) its significance would end with the appointment. Such supposed right could in no case affect the rights or liabilities of a receiver so appointed, and in the present case, could neither of itself, nor in connection with any other of the matters alleged in this count, have any greater effect to create the liability here claimed, than would the appointment of a receiver in the ordinary case, made upon the recommendation of a party in interest, whether with or without contest as to the appointment. There is no magic either in the source, the urgency, or the merit of such a nomination, and when an appointment is made, no matter upon what consideration, the receiver is the representative of the Court alone, owing no one anything in respect of his appointment, but owing to the Court, for the common good of all concerned, his utmost skill and fidelity in the discharge of his duties.

Pursuing the complex theory of implied obligation upon which this count is founded, the plaintiff would have us infer from the resolution of February 25th, 1901, that the defendant's appointment was asked, as President of the company, and in order that he might act as receiver "in its behalf," in other words, as its agent or subordinate. But we are not able to discover anything which can give color to this contention. On the contrary, the language of the resolution seems

to us to preclude it.    As we read it—it plainly asks for the appointment of Col. Tompkins, *the individual*, not Col. Tompkins, *the official.*    The collocation of the words *"on behalf of this company,"* can make no difference in this respect, and their transposition so as to read, "to ask the Court, on behalf of this company, to appoint Col. John A. Tompkins, a receiver," would not only make the grammatical structure correct, but would indicate with absolute precision what we understand to be the true meaning of the words.    If its phraseology had been "to appoint the President of this company Col. John A. Tompkins, a receiver to act in the place of the company," the contention now made as to the meaning of the words would be more plausible.    But the sufficient answer would be then, as it is now, that as the company itself was authorized to act as receiver, such a nomination would have been in effect, a nomination of the company itself, and would necessarily have been so regarded by the Court, resulting either in the appointment of the company, or some other applicant properly recommended.    The fallacy of this branch of the contention, is, that the sole reason for asking the defendant's appointment was to secure for the company the receivers commissions by this means, although there were ample reasons other than that, for seeking the appointment of some one associated with the company, who would administer the trust through its agency, and bring to it the many obvious incidental advantages, which need not be mentioned here.

The next successive position taken by the plaintiff, is, that as he was the President of the company, and his appointment as receiver was approved by the Executive Committee, it was his duty as President, under sec. 13 of the by-laws, to accept the receivership, and that acceptance of the position being thus made an official duty, the position itself became part of his official position as President, and his acts as receiver, were "acts incident to the office of President."    And, as a corollary to this proposition, that as his duties as President were paid for by the salary of that office, the compensation allowed for his services as receiver, rightfully belonged to the com-

pany which paid him his salary for performing these very services.

The by-laws prescribing the duties of the President make no reference to the duties of a receiver, and it would have been remarkable indeed if they had done so, since every receiver, however appointed, is entirely subject to the control of the Court, and his duties are such as are prescribed by the decree appointing him.   The duties of the receiver in this case relate exclusively to the property and affairs of the Maryland Brewing Company, and can in no event require the performance of any duty assigned to the President of the Citizens Trust and Deposit Company.   How then, can it be possible that any acts done as such receiver, under the direction of the Court, can be acts incident to the office of President ?   The statement of such a proposition is its own refutation.   Moreover it is impossible to attribute to by-law No. 13 the meaning contended for by the plaintiff.   It cannot be doubted that its sole purpose was to prevent the President from binding the company, without the approval of its Executive Committee, to the acceptance of any trust which it was authorized to execute. It would doubtless have been competent to forbid the acceptance of such trusts by the President in his individual capacity, but only by clear and unambiguous language. Such prohibition if made, would presumably be obeyed by the President—and respected by the Courts if brought to their notice in due season.   Its disobedience might perhaps warrant the removal of the President from his office, but it does not follow that it would in any manner affect his appointment as receiver, or his right to retain the commissions allowed.

There are many obvious additional considerations which would make it impossible to accept the theory upon which this count is framed, but it is unnecessary to prolong this opinion by detailing them.

The eighth count, sets out the inducements as was done in the seventh, and then alleges that the plaintiff, with the consent of the defendant, agreed to foreclose the deed of trust, without charge, provided the defendant, who was then its

President, was appointed receiver; that he was so appointed with the understanding and agreement that he was to act on behalf of the plaintiff, and was to pay it such compensation as he was allowed for so acting; that he had been allowed compensation, but had refused to pay it to the plaintiff.

The cause of action here stated is an express contract, resting for its consideration, either upon the several matters alleged in the seventh, and repeated in this count, or upon the agreement of the plaintiff, with the consent of the defendant to make the forecloseure sale without charge, provided the defendant was appointed receiver.

What we have said in reference to the seventh count is sufficient to indicate that the first of these supposed considerations is in fact no consideration whatever, in our judgment.

The plaintiff had no vested right to be a receiver, nor any power of *appointing* a receiver, such power being exclusively in the Court; and as the appointment of Col. Tompkins was no damage to the plaintiff, nor forbearance nor suspension of any right it had, it can afford no support for any promise made to the plaintiff. *Folck* v. *Smith*, 13 Md. 90, 91; *Hopkins* v. *Hinkley & Ticck*, 61 Md. 584. Had the plaintiff possessed a vested right to be a receiver, the renunciation of this right would have been a sufficient consideration to support an agreement for the payment of *some part* of the compensation to be allowed. *Ohlendorf* v. *Kanne*, 66 Md. 495.

Turning now to the consideration of the agreement to make the forecloseure sale without charge, it must be recalled that a legal consideration imperatively imports either some benefit to the promisor or some loss or detriment to the promisee. *Brantly on Contracts*, pp. 56 and 57. The adequacy of the consideration will not be ordinarily inquired into, but it must be something real, something of value in the eye of the law. *Forster* v. *Ulman*, 64 Md. 526. In the present case, the alleged contract on the part of the defendant is to pay to the plaintiff *all* the compensation allowed him as receiver. When it is remembered that as receiver he is obliged to give, and pay the cost of, a large bond at his own expense, to discharge

numerous and exacting duties requiring the aid of agents and subordinates, and embracing the operating of the Brewing Company if required by the Court ; to incur heavy liabilities arising out of possible errors of judgment of his own, or derelictions of his subordinates, without any indemnity from the plaintiff so far as is disclosed by the record, it is impossible to discover any benefit resulting to the defendant, anything real, or of value in the eye of the law ; for all is given, and nothing is received.

Nor are we able to perceive that any loss or detriment has been or will be suffered by the plaintiff in consequence of the alleged agreement.

There is no averment that, as trustee under the deed of trust, the plaintiff had any right to make said foreclosure sale, or to charge for making it, and we cannot assume fundamental matters not averred.   When the Court took jurisdiction and control through its receiver, of the property and affairs of the Brewing Company it was for the Court to determine (conceding for the moment that the deed gave the power of sale to the plaintiff in the absence of a receiver,) whether in the exigency of the situation then existing, a foreclosure sale should be made by the plaintiff, or in some other manner deemed by the Court more conducive to the interests of all concerned; and unless the plaintiff had such right at that time, it surrended nothing real, or of value in the eye of the law, and therefore has suffered no loss or detriment.   Moreover, the fruits of the charge which it was agreed should be relinquished, could only have been realized through a foreclosure actually made, and there is no averment that any forclosure was made, and without such foreclosure, there could be no valid foundation for a claim against the defendant, even upon the theory of this count; again, if the foreclosure sale was made by the plaintiff, yet if the plaintiff did not relinquish the charge, but claimed and received the same, the foundation of its claim against the defendant would equally fail, and without an averment that the sale was made by the plaintiff, and made without charge in accordance with the agreement, this

count fails to state a sufficient consideration for the defendant's promise.  The plaintiff did aver that the defendant had acted as receiver and had actually received compensation for his services as receiver, and it was equally necessary to aver that the plaintiff had made the foreclosure sale, and had *not* made any charge, nor received any compensation therefor.  There was thus upon the face of this count an entire failure of the only remaining consideration upon which the promise of the defendant could be supported, and a promise without legal consideration cannot be enforced, however much we may commend the example of him,

> "Who though he promise to his hurt,
> Yet makes his promise good."

The question of public policy was argued by the plaintiff's counsel in a very interesting manner, with special reference to the exercise of fiduciary relations by modern corporations known as trust companies, but in view of our conclusion that the want of consideration is fatal to the claim of the plaintiff, it is unnecessary to consider that question.

*Judgment affirmed with costs above and below.*

(Decided April 2nd, 1903.)