M. ALEXANDER ANDERSON et al. *v.* MAY
H. TRUITT et al.

[No. 41, October Term, 1929.]

194

*Decided January 9th, 1930.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Stanley G. Robins,* with whom were *Wailes & Robins* on the brief, for the appellants.

*L. Claude Bailey,* with whom were *Miles & Bailey* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

Purchasers of a business property and good will sue in this case to restrain violation by the sellers of a covenant by them not to enter into a business of a similar nature and character within a limited time, in a specified area. And the trial court, having by its final decree denied the injunction prayed, the purchasers appeal. The decree dismissed the bill of complaint altogether as to one defendant, May H. Truitt, and enjoined Thomas J. Truitt merely from conducting the new, similar business in such a manner as to harass and embarrass the plaintiffs in the conduct of the business sold to them.

The original business was that of selling furniture in Salisbury, Wicomico County. The style of the business was the T. J. Truitt Furniture Company; and it was carried on in a building owned by Truitt and wife, the two defendants, as tenants by the entireties. The business was declared to be owned by the wife however, and her husband occupied the avowed position of manager; and in the agreement of sale, executed by both husband and wife, for a purchase price stated, the wife alone appears as selling and conveying to Anderson and Bozman two-thirds of the business, and the husband and wife together agreed to convey to them, and later did convey to them, two-thirds of the real property.

The Truitts thus retained one-third of the interest previously held by them. The agreement included a covenant that the sellers, in consideration of the sale, would not enter into a business of a similar nature or character either directly or indirectly in Wicomico County, Maryland, during a period of twenty-five years. There was a collateral agreement, furthermore, that a corporation should be formed to take over and carry on the business; and it was formed, under the name of T. J. Truitt Furniture Co., Inc., and the respective shares of Anderson, Bozman, and Mrs. Truitt in the business and property were converted into ownership of thirds of the stock, Mrs. Truitt receiving the whole of the stock representing the purchase price of the sale. Three years later Mrs. Truitt sold her one-third of the stock, constituting all her remaining interest, to Anderson. Subsequent to that sale a similar business was set up by the Truitts on the same street in Salisbury, a short distance from the previous place of business, under the name of the Salisbury Furniture Company. The words "T. J. Truitt, Manager" were displayed under the name of the company on the front of the building. That new business was, still later, incorporated under the same name. There was testimony of resulting confusion in the minds of persons dealing, or intending to deal, with the older company, but this court takes the view that the case is to be considered only as one upon a violation of contract, and that the confusion, if any, is therefore unimportant.

The new business, that of the Salisbury Furniture Company, with Truitt as manager, was represented to be the business of a daughter or daughters of Truitt and wife, but Truitt in his testimony, while declaring that each of two daughters held twenty shares of stock in the corporation out of a total issue of fifty, and that he himself held the remaining ten, admitted that the money represented by the daughters' shares had been given them by their parents. The daughters took no part in the conduct of the business before incorporation and take none now after incorporation, have no power to sign checks, and derive earnings from outside occupations. Truitt and wife, the parties sought to be en-

joined here, actively manage the business, both sign checks, always in his name, and both take part in the work as needed every day. The evidence, in our opinion, establishes that they have both been engaging in a competing business contrary to the terms of the contract of sale.

There is no uncertainty in the principles of law governing a suit to enforce a covenant to abstain from competition with a business sold. Given the collateral stipulation, founded upon sufficient consideration, to abstain from such a competing business within a reasonably limited area, the purchasers of the business are, as a general rule, and almost as a matter of course, entitled to the aid of a court of equity by injunction to secure them in their contract rights. "Whether the consideration for the restraint is adequate or not, is a question that the court will not inquire into. It is sufficient that the contract shows on its face a legal and valuable consideration; but whether adequate or inadequate to the restraint imposed, must be determined by the parties themselves, upon their own view of all the circumstances attending the particular transaction. If it were otherwise, it would be the court and not the parties, that would make the contract. All that the court is required to do, in passing upon the validity of the covenant, is to determine whether the restraint is reasonable and consistent with law, and whether there be a legal consideration to support it." *Guerand v. Dandelet,* 32 Md. 561, 568; 4 *Pomeroy, Equity Jurisprudence,* sec. 1344, and note; *Armstrong v. Bitner,* 71 Md. 118; *Kaliopulus v. Lumm,* 155 Md. 30.

The appellees, referring to the analogy of a suit for specific performance of a contract, and the rule that a decree for specific performance is not of absolute right in a party but of sound judicial discretion, urge that the injunction sought should be refused, for one reason, because the area from which the sellers were by the terms of their contract to be excluded, Wicomico County, was larger than was necessary or reasonable for the protection of the business sold, and that therefore in the exercise of its discretion the court should

withhold its aid to enforce it. That argument might still leave open a question of enforcing a more limited restriction, as for instance, one against re-entering the business in the same town. *Guerand v. Dandelet,* 32 Md. 561, 567. The restriction in this instance is not unusually extensive in area, however. As territory to be reached from the county seat, the whole county seems to be within ordinary and reasonable limits. The restrictions upheld in *Guerand v. Dandelet* and *Armstrong v. Bitner, supra,* and in many cases elsewhere, were equally extensive. And under modern conditions of communication and travel there would be even less ground for objection to such a restriction. As Lord Bowen said of the same objection in the leading case of *Jacoby v. Whitmore,* 49 L. T. (N. S.), 335, 339, "The answer is, that it is not a hard bargain because it is not unreasonably in restraint of trade, and it does not shock the conscience." The sellers procured a sale of the property by means of the covenant, and if it cannot be impeached for unreasonably restraining trade for the public interest or shocking the conscience of the court from the standpoint of the sellers' interests, it must be enforced.

Both of the appellees deny violation of the covenant. Thomas J. Truitt, the husband, denies that he was a party to it, or bound by it, and both he and his wife deny violating it, if both were bound. As already stated, we find from the evidence that both acted in contravention of the covenant, and it is not disputed that the wife was bound by it. On its face the covenant appears to have been made by both the parties signing, Truitt and wife, without distinction. While the wife alone appears as selling the business and good will as owned by her, the covenant against re-entering business reads, "And the parties of the first part (the Truitts) in consideration of this sale do hereby covenant and agree." A covenant on the part of the husband as well as the wife would seem to be a natural and obviously important incident of the contract, if the purchasers were to obtain any such protection at all for their purchase. While ostensibly the business belonged to the wife, it was conducted by him, under his name,

and the good will would follow him rather than the wife to another place. He contends that he was a party to the contract of sale only so far as to agree to convey his interest in the real estate, and, in a subsequent agreement providing for the transfer of the stock of furniture, and sales and leases of furniture sold, it was recited that he joined in the original contract of sale "to convey his inchoate interest as the husband of May H. Truitt." His contention is at variance with the terms of the original contract itself. And whatever his purpose in joining in that original contract may have been, in carrying out that purpose he did clearly covenant not to re-enter the business. And we see nothing in the subsequent recital of purpose to derogate from that fact.

Truitt contends further that, if he did enter into the covenant, still it was without consideration moving to him, and so not binding. But that argument proceeds upon a theory that the consideration to support a promise must in every case be one which moves to the promisor, even though the promisee may have changed his position and taken action upon the faith of it; and that is not a correct theory. The promise is binding if upon the faith of it the consideration is parted with to another as beneficiary. 1 *Williston, Contracts,* sec. 102; *Amer. Law Inst., Restatement, Contracts,* sec. 90; *Bowen v. Tipton,* 64 Md. 275, 290; *Steele v. Steele,* 75 Md. 477; *Devecmon v. Shaw,* 69 Md. 199; *Johnson v. Lawrence,* 88 S. C. 496; *Davis v. Blum,* 104 S. C. 218, 222; *Piatt's Admr. v. United States,* 22 Wall. 496. There seems hardly room for doubt of the fact that Truitt's covenant formed inducement for Anderson and Bozman's purchase and payment of the purchase price. As the business had been conducted by him under his own name, then, taking at its full face value the representation of ownership by the wife alone, he was the one from whom the protection of such a covenant was necessary.

For the reasons here stated, it is the opinion of this court that there was a violation of the covenant by both the appellees, which should be restrained at the suit of the proper parties.

It is objected, however, that, inasmuch as the business purchased was turned over to a corporation, which has since owned and conducted it, and Anderson and Bozman are now only stockholders in that corporate owner, the corporation and not those stockholders is the proper party to enforce the covenant against competition with its business. There can be no doubt of the vesting in the corporation of rights in the covenant, for simultaneously with the original sale it was agreed by all parties to it that the corporation should be formed to take over the business, and all converted their interests into shares of stock. The intention to contract for the corporation seems plain. And given this fact, the question of the proper party or parties to enforce the covenant results. It is a new question in this court, and one on which other courts have differed. In the cases of *M'Causland v. Hill,* 23 Ont. App. Rep. 738; *Ragsdale v. Nagle,* 106 Cal. 332, and *Dunlop v. Gregory,* 10 N. Y. 241, the view was taken that the individuals who made the original contract might still sue; and the opposite view, that only the corporation could sue, was taken in *Knowles v. Jones,* 182 Ala. 187; *Palmer v. Toms,* 96 Wis. 367; and *Gompers v. Rochester,* 56 Pa. 194; and other cases cited in the reports of these. The conclusion depends upon the preference of theories of the legal situation. Against the view that the original individuals may sue, it is urged, in the cases cited, that the covenant against competition is not in such a situation a personal one, but one which exists only in connection with ownership of a business sold, and cannot exist apart from it; that a double ownership of interest under the covenant, that is, ownership in the corporation, and in its stockholders too, is contrary to the theory of the distinctness of a corporate entity and the stockholders in it, and entire ownership of one interest or property right in each of two independent persons is an anomaly which must cause conflict and confusion. In the case of *M'Causland v. Hill, supra,* a dissenting judge suggested the difficulty that would arise if the corporation should agree to competition in some degree and the stockholders on the original contract should sue to restrain it. For the op-

posite view it will be sufficient to quote two of the majority judges in the same case. Osler, J. A., said: "Upon the best consideration I have been able to give the question, I am of opinion that the action well lies at the suit of these plaintiffs to enjoin the defendant from breaking his covenant, though it may be that the company could also have sued. * * * But whether the new company could have sued or not, it is impossible to deny that the plaintiffs as shareholders in it are interested in the observance of the covenant." And Maclennan, J. A., said: "It is objected that the new company should have been the parties to sue, and that the plaintiffs could not maintain the action. It may be that the new company could have sued, or would be proper co-plaintiffs. But inasmuch as the present plaintiffs are covenantees, and as shareholders in the company have an undoubted interest in the observance of the defendant's covenant, they can maintain the action, both on their own behalf and as trustees for the company. That was so held in *Showell v. Winkup,* 60 L. T. N. S. 389."

It seems to this court that the better reasoning supports the view that only the corporation may now sue to restrain the violation of the covenant. The mere fact that Anderson and Bozman still have an interest in the business now owned by the corporation would not, we think, answer the question. Every stockholder has an interest in his company's business and property, but that fact does not give stockholders a right to sue to enforce the corporation's rights or to protect its property. For all such purposes the corporation, according to our legal theory, represents its stockholders, and has exclusive power to act for them, assuming that there are no questions of fraud or abandonment of rights by the corporation. In a limited class of cases this court has disregarded the distinction between a corporation and its stockholders when necessary. *Bethlehem Steel Co. v. Concrete Pile Co.,* 141 Md. 67, 81. But we are not now dealing with any such cases, or with any necessity for disregarding the distinction. The appellants would seem to have no separate, personal interest in the covenant, in addition to their indirect interest as stockholders in the corporation. Upon a sale of

202

their stock by them, clearly, no right to enforce would pass to the next holders; and none would remain in the appellants. The fact that they were the original parties to the contract would leave in them after formation of the corporation no interest over and above that of stockholders. Therefore, a suit by them to enforce the protecting covenant now would seem to be without support in any theory, and contrary to established theories of the corporate entity, capacity, and exclusive right to act in its own interest. For this reason we find ourselves constrained to hold that the present suit cannot be maintained. There can be no substitution of the corporation as a party by amendment, as we find the appellants to be improper parties, and entirely new parties cannot be substituted by amendment. As the case appears to have been fully presented, we have nevertheless expressed the opinion of this court on all its questions in order to save expense and delay in proceedings upon a new bill.

> *Decree as to May H. Truitt affirmed, and as to T. J.*
> *Truitt reversed, and bill dismissed as to both,*
> *without prejudice to a new bill which may be*
> *filed by a new party; costs to the appellees.*