## CATHERINE BROADDUS *v.* FIRST NATIONAL BANK OF HAGERSTOWN.

[No. 31, April Term, 1931.]

*Decided June 11th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Elias B. Hartle* and *Jos. W. Wolfinger,* with whom was *Calvert K. Hartle* on the brief, for the appellant.

*Robert H. McCauley,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The suit in this case was brought by the appellant against the appellee in the .Circuit Court for Washington County, seeking to recover the sum of $2,300. The defendant is the executor of the last will of Emma K. Thomas, deceased. The declaration contains the common counts, and this special count; "And for that the said Emma K. Thomas, by her verbal contract entered into with Catherine Broaddus, on or about the 24th day of September, A. D. 1929, wherein the said Emma K. Thomas promised and agreed that in consideration of the said Catherine Broaddus purchasing a certain lot or parcel of land, together with the improvements thereon, situate and lying in the City of Washington, in District of Columbia, and known and designated as residence No. 6409 Seventh Street, N. W., that she, the said Emma K. Thomas, would pay the sum of five thousand dollars ($5,000) on the purchase price of the same, and that in pursuance of said agreement the said Catherine Broaddus purchased said property and that the said Emma K. Thomas made two payments on account of the purchase price thereof, to wit: the sum of $2,000 on the 24th day of September, A. D. 1929, and the sum of $700 on the 27th day of September, A. D. 1929, leaving a balance due thereon and unpaid of $2,300." At the close of the plaintiff's case, at the instance of the defendant, the court instructed the jury to return a verdict in favor of the defendant. This ruling is the only exception contained in the record. From the judgment entered on this verdict for costs, the appeal here is prosecuted.

The defendant's decedent died in November, 1929, leaving a last will and testament, and as her next of kin two sons, one of whom, living in Texas, has no children, and the other is the father of the plaintiff, herself an only child. The plaintiff's maiden name was Catherine Thomas. She was married on June 14th, 1929, to Walter A. Broaddus, who at the time of his marriage lived with his parents in or near the District of Columbia. Immediately after their wedding trip they resided with his parents. The record discloses that some time about August, 1929, the decedent, Emma K.

Thomas, told several persons that she proposed to give her granddaughter, Catherine Broaddus, the sum of $5,000 as a wedding present, to be used in the purchase and establishment of a home. This purpose was testified to, in slightly varying language, by the witnesses. Mrs. Morrison, a cousin of Mrs. Thomas, stated: "She (Mrs. Thomas) told me that she had told Catherine when she came off of her wedding trip, when she got ready to go to housekeeping, she would give her $5,000 towards a home." Mrs. Eader, a relative of the plaintiff, testified that she knew Mrs. Thomas quite well; that Mrs. Thomas made her home with witness' sister, who rents part of witness' house; that she had a conversation with Mrs. Thomas in respect to a wedding present that witness had given Catherine; that Mrs. Thomas thanked her for the wedding present on behalf of her granddaughter, and told witness that she had promised Catherine $5,000 towards buying a home for herself, this was on August 19th, 1929; that Mrs. Thomas went to Washington and bought the home, which she said she had bought for them, meaning Mr. and Mrs. Broaddus; that she was to pay $5,000 on the home and they were to make up the difference. Mrs. Mamie Thomas, the mother of Catherine Broaddus, testified that on June 19th, 1929, when Catherine returned from her wedding trip, she and her husband went to the room of the grandmother, who was sick at the time, and shortly thereafter came down and told witness what had taken place upstairs; later witness went up and told Mrs. Thomas that she was glad to know what she had promised Catherine, and Mrs. Thomas replied, yes, she meant to help Catherine to get a home, that she told Catherine she meant to help her get a home; that during the week of August 18th Catherine was home on a visit, at which time she and her grandmother had a conversation, the grandmother the following day saying to witness that she had had a conversation with Catherine about building a home and Catherine was not interested, and witness said: "How could they be interested? Neither of them have anything to do anything like building a home." And Mrs. Thomas thought that the $5,000 that she intended and told

them she was going to give towards their home would buy them a plot of ground and build them a little bungalow. Witness further stated that, on the day before her daughter and son-in-law began housekeeping, witness had a conversation with Mrs. Thomas and "asked her why she had come back from Washington, why she did not pay the $5,000 that she had promised on the property and give the amount down that they could carry this property along, and she said her full intentions were, afterwards she found she only had the $2,000 in bank and she borrowed the $700 to make the $2,700, and she came back to Hagerstown with the intention of going to Mr. Flook, who had been seeing to her affairs, and gave him permission to call the money in that she had in Washington. I think it was some stock she had down there, or mortgage, something of that sort, I don't recall just exactly, but something of the sort, it was money, anyhow. She thought that he could get them in, and he thought so too, about the first of November, and then she would pay the balance of the $5,000 off, and that would give Catherine then the balance, I just don't know, I can't offhand give the balance, but after the $5,000 was paid they could carry the others in the building and loan. That was her intention, and they could carry that at their wages." The husband of the appellant was asked what conversation he had with Mrs. Thomas in which she spoke of buying this property for his wife, and testified that "the first time we went up there following our return from our wedding trip, when I went to tell Mrs. Thomas good-bye before returning back to Washington, she told us good-bye and then told me, when we got ready to go in a home of our own, that she had told Catherine that she was going to give her some money towards the place"; that later Mrs. Thomas questioned the witness as to the price of real estate in Washington.

The record further discloses that the Broadduses began looking at residential property in the District of Columbia with a view to selecting a home in accordance with what they had been told by Mrs. Thomas; that they finally decided they liked the property which was afterwards purchased. They

then went to see the grandmother, who was in Riverdale on a visit, and told her of their discovering a house which they thought would suit them; that Mrs. Thomas did not appear to be much interested, but later called her granddaughter, and the Broadduses went again to Riverdale, and discussed the price more fully with Mrs. Thomas, telling her there was a first trust on the property, that the minimum deposit on the house would be $350, that the rest of the difference between $7,950 and $4,800 would have to be taken care of in monthly payments of $55, $65, or $70; that she told them "she could take care of what would be equal to the second trust for Catherine, whatever that was, she did not say." This conversation took place just prior to September 24th, upon which date an appointment was made with Mr. Lyon, the real estate agent, who took Mrs. Thomas out to see the property. While there, Mrs. Thomas made a thorough examination of the property, and decided to take it; whereupon a contract of sale for the property was drawn, which was signed by the Broadduses and the then owners. Broaddus further stated, on cross-examination, that Mrs. Thomas "told me that when we got ready to go into the home, that she was going to give Catherine some money towards it," but did not name specifically the amount she was going to give. The contract, which was entered into on September 24th, 1929, recited the receipt of $2,700, described the property, stated the price to be $7,500, that the terms of sale were $2,700 cash, of which $2,700 is paid down, and balance of $4,800 to be represented by a deed of trust, interest on first trust to be at the rate of 6 per cent., settlement to be made on October 15th, 1929. A copy of the deed of that date is filed as an exhibit, and shows that the property described in the contract was conveyed to Walter A. Broaddus and Catherine E. Broaddus, his wife, as tenants by the entirety, subject to a duly recorded deed of trust for $4,800. The agent for the sale of the property, Thomas W. Lyons, testified that the Broadduses first looked at the property and liked it, some few days prior to September 24th, 1929, on which latter date they returned accompanied by Mrs. Thomas and asked that

the property be shown to her; that Mrs. Thomas asked a great many questions about the construction and physical make-up of the house, and being satisfied with the examination, suggested that they talk over the financial end; that she asked what was the price of the property, and was told $7,950, and she then wanted to know what discount would be allowed for cash. The agent told her that they were not interested in getting all of the cash, as they had already received $4,800 through the first mortgage; and after considerable negotiations it was agreed that the price of the property should be $7,500 instead of $7,950, as first asked, and that this should be represented by the $4,800 mortgage then on the property and the payment of $2,700 in cash; that Mrs. Thomas made a cash payment of $2,000 and said she would pay the $700 in a few days; that witness held the contract until the $700 was received by him, in accordance with Mrs. Thomas' promise, at which time the contract was turned over to her, awaiting final settlement on October 15th, when the deed was to be, and was, executed and delivered; that the $2,000 paid was Mrs. Thomas' personal check, and the $700 was represented by a cashier's check from a Hyattsville bank payable to Mrs. Thomas and indorsed by her; that, at the time the contract was executed, witness asked who was to sign it, and was told by Mrs. Thomas that the Broadduses would sign it, as the property was to be conveyed to them.

We have set out at some length and with particularity the evidence in the case, in order to show what the transaction was, according to the testimony of the plaintiff's witnesses. The lower court instructed a verdict for the defendant for the reason that there was no consideration for the promise made by Mrs. Thomas, and therefore the alleged agreement, even though having been entered into as testified, was invalid. We agree with this ruling.

It is unnecessary at this time to cite authorities in this state and elsewhere to the effect that every contract must be supported by a consideration; and this must be regarded as one of the elementary principles of the law of contract. What, then, is necessary to show a consideration which will

support such a contract as is now being considered? A great number of decisions have established the rule that a benefit to the promisor or a detriment to the promisee is a sufficient consideration for a contract. As stated in 6 *R. C. L.* 654, sec. 67: "A valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Citizens' Trust Co. v. Tompkins,* 97 Md. 182, 54 A. 617; *Mott v. Fowler,* 85 Md. 676, 37 A. 717; *Steele v. Steele,* 75 Md. 477, 23 A. 959, 960; *Bowen v. Tipton,* 64 Md. 275, 1 A. 861; *Devecmon v. Shaw,* 69 Md. 199, 14 A. 464; *Young v. Boyd,* 107 Md. 449, 69 A. 33; *Brantly on Contracts,* secs. 25, 26; 1 *Williston on Contracts,* sec. 99; *Anderson v. Truitt,* 158 Md. 193, 148 A. 223.

Applying the thus well-established law to the facts in this case, it is clear that there was no consideration for the alleged promise made by Mrs. Emma K. Thomas to her granddaughter, Mrs. Broaddus. There was no benefit inuring to Mrs. Thomas such as the law recognizes as a consideration for her promise; and Mrs. Broaddus suffered no detriment by reason of such promise. The promise was not responsible for her incurring any burden or being saddled with any liability or obligation. When we extract the substance of the evidence offered on behalf of the plaintiff, we find it to be simply a promise on the part of Mrs. Thomas to make a wedding present or gift to her grauddaughter in the sum of $5,000, to be used or expended in the purchase of a home and defraying the costs of the young couple setting up housekeeping. In this inquiry we are not concerned with the question of whether or not the evidence is sufficient to establish the promise on the part of Mrs. Thomas as alleged, because even if that be assumed, the promise still lacks a consideration necessary to support it, and is unenforceable. It is undoubtedly true that Mrs. Thomas did promise to give her grauddaughter some amount as a wedding present; and it is equally true that she paid the $2,700, which was the full price of the equity in the property purchased. The tes-

timony shows that Mrs. Thomas purchased the property, in the sense that she made the bargain and paid the money. Mrs. Broaddus selected the house, which satisfied herself and husband, and then notified Mrs. Thomas, who made a thorough examination of the property, bargained with the agent to such effect as to reduce the original purchase prise from $7,950 to $7,500, and paid the $2,700, the difference between the purchase price and the mortgage of $4,800 then on the property; the transaction being equivalent to Mrs. Thomas giving Mrs. Broaddus the equity of redemption in the property. The evidence does not disclose that Mrs. Broaddus expended a cent upon the faith of the promise made to her, nor incurred any personal obligation, either as to the payment of the principal or interest on the mortgage. She did not assume the payment of the mortgage, nor in any way covenant or agree to pay the mortgage debt and interest. Should the mortgagee find it necessary to foreclose the mortgage, the property would be responsible, but Mrs. Broaddus could in no way be made personally responsible for any deficiency. Under such circumstances, there was no consideration for Mrs. Thomas' promise to pay the remaining $2,300, the difference between the $2,700 which she did pay and the $5,000 which she is alleged to have promised to give. If she had lived, and refused to proceed further in the completion of her alleged promise, she could not have been compelled to perform, and her executor is in a like position.

The appellant relies on *Steele v. Steele, supra,* as authority for her contention here made. That case is wholly different from the one before us, in that the son purchased the property upon the faith of his father's promise, and incurred liability; the court there saying: "Without going through the long list of cases in which the question as to the sufficiency of consideration has been considered, it is sufficient to say it is well settled that if one incurs a legal liability, as by entering into a contract with a third person, the liability thereby incurred is a sufficient consideration to support a promise by the person at whose request it was incurred." In the instant case there was no contract or engagement entered into by the

appellant which resulted in her incurring any legal liability. While it is true she signed the contract of sale which provided that the deed should be made to herself and husband as tenants by the entirety, the full purchase price, other than that represented by the outstanding mortgage, was paid by Mrs. Thomas and not by her. What we have said in regard to the case of *Steele v. Steele,* as differentiating that case from the one here considered, is also true in reference to the case of *Crosbie v. McDoual,* 13 Vesey, 147. In that case the promisee incurred liability upon the faith of the promise, and it is in strict accord with the decision in *Steele v. Steele.* We find no error in the action of the lower court, and same will be affirmed.

*Judgment affirmed, with costs to the appellee.*